# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § <br> § <br> *Plaintiff,* § <br> v. § <br> § <br> SCOTT GANN, *et al.*, § <br> § <br> *Defendants.* § | Civil Action No. 4:24-cv-277 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Scott Gann's Motion Based on 28 USC [sic] § 455 and Motion for In Camera Inspection (the "§ 455 Motion") (Dkt. #97), and Brief Supporting Bases for Motions Related to Conflict, Recusal, and Disqualification (the "§ 144 Motion") (collectively, the "Motions") (Dkt. #100). Having considered both Motions, the relevant pleadings, and the applicable law, the Court finds that the Motions should be **DENIED**.

### BACKGROUND

This civil action arises under 26 U.S.C. §§ 7401 and 7403, and primarily concerns the enforcement of tax liens against Defendant Scott Gann ("Gann"). Specifically, a delegate of the Secretary of the Treasury found that Gann owed multiple Trust Fund Recovery Penalties ("TFRPs") under 26 U.S.C. § 6672 for various quarters (Dkt. #1 at ¶ 17). On April 17, 2017, the United States Court of Federal Claims reviewed the initial assessments made against Gann and found him liable for over $1,000,000 (Dkt. #1 at ¶ 18). Following Gann's repeated refusal to pay the delinquent TFRPs, the United States sought enforcement of federal tax liens against a certain housing property owned by Gann (Dkt. #1 at ¶ 27). Consequently, it filed suit against Gann and a variety of other Defendants on March 29, 2024 (Dkt. #1).

After over a year of litigation, the Court received a motion to disqualify under 28 U.S.C. § 455 (Dkt. #97). As the motion appeared disconcerted and sparce in its discussion of fact and law, the Court set it for hearing on October 30, 2025 (*See* Dkt. #97; Dkt. #98). From what the Court could gather at that hearing, Gann's theories of recusal revolved around two propositions: first, that the Court and Gann were "romantic rivals" at one point in time; and second, that third parties such as the Court might hold a negative perception of Gann as a result of some actions he had taken in the past (*See* Dkt. #100 at p. 8). Both theories are based, in their entirety, on an incident that allegedly occurred over 37 years ago, at a 1988 college graduate and undergraduate gathering near Baylor University Law School (*See* Dkt. #100 at p. 7). Over the Court's repeated denial of Gann's vague and unsupported allegations, Gann stated his belief that the undersigned had attended the gathering as a law student and had become involved in or witnessed an altercation between Gann and a certain female student. Gann testified that he had removed the female student from the party in the presence of many people, including his friends.[1] Gann also stated that he had no prior or additional interactions with the Court, and further testified against his own theories of recusal by noting that he was neither romantically interested in the relevant female student nor perceived by third parties in a generally negative light at the gathering. In response, the undersigned denied attending any such event, denied ever having seen Gann prior to the October 30, 2025 hearing, detailed the extent of his long and loving relationship with his wife, and noted that his personal circumstances at that time simply did not permit Gann's accusations to be possible.

---

[1] The § 144 Motion states that: "frankly, 37 years ago, Gann's friends most likely 'over did it' and tried to or actually did unfairly make others feel unwelcome or uncomfortable at Baylor in the short term" (Dkt. #100 at p. 10).

2

As the hearing continued, Gann's attorney, Jason Charles Ciarochi ("Ciarochi"), attempted to summarize the factual and legal merits of the § 455 Motion in the face of several critical issues. These issues included: (a) the failure to provide the correct name of the woman involved in the alleged incident; (b) direct contradiction by the sworn live testimony of his client, Gann; and (c) Ciarochi's failure to point to a single case supporting his theory underlying the § 455 Motion despite a nearly 10-minute-long grace period. At the end of the hearing, the Court denied the § 455 Motion, warned Ciarochi that he had failed to raise a sufficient factual or legal basis for recusal, and ordered him to file a supplemental brief indicating the presence of good faith in filing the § 455 Motion within four days.

Five days later, Ciarochi filed the § 144 Motion (Dkt. #100). Rather than endeavor to show good cause for bringing the insufficient § 455 Motion, Ciarochi expressly argued that recusal was warranted under an additional legal theory, 28 U.S.C. § 144, and doubled down on the same factual basis that the Court had rejected less than a week prior (Dkt. #100 at pp. 9, 11, 20–21).[2] To ultimately lay the matter to rest, the Court now addresses both avenues of recusal under the facts presented and denies them in kind.

## LEGAL STANDARD

28 U.S.C. § 455 governs the disqualification and recusal of a federal judge. Under § 455, "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The

---

[2] "[T]he reasons for the motion are supported by statute (whether 28 U.S.C. § 455(a) or § 144)" (Dkt. #100 at p. 9); "The statutes §§ 144 and 455 support Defendant's *Motions* and the Motion is more accurately presented in this brief" (Dkt. #100 at p. 9 (emphasis added)); "Gann respectfully moved for a party to consider whether the prior conflicts that Gann believe occurred . . . create[d] the appearance of impropriety triggering Under [sic] 28 U.S.C. § 455 or the similarly worded 28 U.S.C. § 144" (Dkt. #100 at p. 11).

3

decision whether to recuse under § 455 is committed to the sound discretion of the Court asked to recuse. *See, e.g.*, *Garcia v. City of Laredo*, 702 F.3d 788, 793–94 (5th Cir. 2012); *Sensley v. Albritton*, 385 F.3d 591, 598 (5th Cir. 2004) (quoting *Chitimacha Tribe of Louisiana v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1166 (5th Cir. 1982)). The United States Supreme Court has made clear that "[t]he recusal inquiry must be made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 541 U.S. 913, 924 (2004) (citation modified). The Fifth Circuit has interpreted this mandate to mean that "[courts] ask how things appear to the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person," while remaining "mindful that an observer of our judicial system is less likely to credit judges' impartiality than the judiciary" would be. *United States v. Jordan*, 49 F.3d 152, 156–57 (5th Cir. 1995). "Indeed, the statute exists to mandate recusal in cases where it truly appears (or is the case that) the presiding judge cannot consider the case impartially—not where a litigant's speculation based on incomplete information implies concealment and impropriety." *Shugart v. Hoover*, No. 4:17-CV-633, 2018 WL 647769, at *2 (E.D. Tex. Jan. 31, 2018) (citing H.R. REP. NO. 93-1453, at 6355 (1974)). Further, the recusal inquiry is "extremely fact intensive and fact bound" and requires "a close recitation of the factual basis for the . . . recusal motion" by the movant. *Republic of Panama v. Am. Tobacco Co., Inc.*, 217 F.3d 343, 346 (5th Cir. 2000) (citation modified).

28 U.S.C. § 144 similarly governs the disqualification and recusal of a federal judge. Under § 144, "when a party . . . makes and files a timely and sufficient affidavit alleging that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further, and another judge shall be assigned to hear

4

the proceeding." *Shugart*, 2018 WL 647769, at *1 (quoting *Thornton v. Hughes, Watters & Askanase, LLP*, No. 2:16-CV-66, 2016 WL 8710442, at *5 (S.D. Tex. Oct. 21, 2016), *report and recommendation adopted*, No. 2:16-CV-66, 2016 WL 6775676 (S.D. Tex. Nov. 16, 2016)). An affidavit is legally sufficient if it meets the following requirements: "(1) the facts must be material and stated with particularity; (2) the facts must be such that[,] if true[,] they would convince a reasonable man that a bias exists; and (3) the facts must show [that] the bias is personal, as opposed to judicial, in nature." *Henderson v. Dep't of Pub. Safety & Corr.*, 901 F.2d 1288, 1296 (5th Cir. 1990) (citing *Parrish v. Bd. of Comm'rs of Ala. State Bar*, 524 F.2d 98, 100 (5th Cir. 1975), *cert denied*, 425 U.S. 944 (1976)); *United States v. Merkt*, 794 F.2d 950, 960 n.9 (5th Cir. 1986). If the affidavit is not legally sufficient under § 144, there is no need for referral of the matter to another judge. *See Henderson*, 901 F.2d at 1296 (holding that referral is irrelevant if a § 144 affidavit is insufficient).

## ANALYSIS

As noted above, Gann asserts that recusal is appropriate because the undersigned allegedly attended a university gathering over 37 years ago and interacted with a female student, one Suzanne Plyliers ("Plyliers"), who was eventually removed from the gathering by Gann (*See* Dkt. #100 pp. 7–8). Gann has raised no evidence to suggest that either he or the Court were romantically or otherwise deeply socially involved with Plyliers, and admits that he has not interacted with the Court at any point within the 37 years following their initial alleged interaction (*See* Dkt. #100 at p. 10 ("To the Court's credit, the Court is correct in suggesting that Mr. Gann and the Court did not have any communications for about 37 years or so between now and then")). Gann has also put forward no evidence beyond his personal testimony that the Court ever attended the alleged gathering, and has not directly responded to the Court's insistence that he is likely simply mistaken.

5

Gann has nevertheless argued that the facts presented at the October 30, 2025 hearing and in the Motions are sufficient to support a recusal under either a "romantic rival" or a "third-party perception" theory. For the reasons established below, Gann is wrong on all accounts.

## I.     Recusal Under 28 U.S.C. § 455 is Not Warranted

Gann has failed to present any factual basis to support a circumstance in which this Court's "impartiality might reasonably be questioned." 28 U.S.C. § 455. First, Gann's "romantic rivals" theory fails on account of direct contradiction and lack of evidence. At the outset, the Court notes that when Ciarochi was asked to show good faith for any "romantic rivalry" basis to recuse, Ciarochi attempted to withdraw all "references to 'romantic rivalries' and instead go[] with the Court"s [sic] lead in realizing that both Gann and the court have said they were not in a dispute to find or seek a female" (Dkt. #100 at p. 16). The Court plainly rejected the unfounded "romantic rivalry" theory at the hearing and rejects it here once more. Put simply, Gann has failed to produce evidence that the Court was even aware of Plyliers' existence prior to the October 30, 2025 hearing, let alone that there was any romantic interest between the two. Not only that, but Gann himself repeatedly testified at the hearing that he had no romantic interest in Plyliers, later clarifying in the § 144 Motion that he "was seeing someone else at the time" (Dkt. #100 at p. 8). The barren record, together with Gann's own sworn contradictory testimony, precludes the success of any novel "romantic rivalry" recusal theory (Dkt. #100 at p. 7).

Second, Gann's third-party influence theory also cannot constitute a valid ground for recusal. Although Gann personally testified that the attendees of the alleged gathering likely harbored no ill-will toward him as a result of his actions that evening, the filed § 455 Motion nevertheless states that "Gann's concern is that he was seen or thought of as too much of an annoyance or meddling pest" in the alleged presence of the Court and other third parties

(Dkt. #100 at p. 8). Even setting aside the contradictory nature of the evidence presented, Gann has not cited, and the Court has not found, any caselaw to support the notion that a party's personal belief regarding its perception by unnamed third parties can support a motion to recuse under 28 U.S.C. § 455.[3] Rather, "'erroneous perceptions of reality and loosely based charges of partiality based on personal perceptions . . . do not warrant or justify recusal or disqualification.'" *Alston v. Prairie Farms Dairy, Inc.*, No. 418CV00157DMBJMV, 2018 WL 11612052, at *2 (N.D. Miss. Oct. 22, 2018) (quoting *In re AVN Corp.*, No. 98-20098, 1998 WL 35324198, at *3 (Bankr. W.D. Tenn. Dec. 8, 1998)). Indeed, 28 U.S.C. § 455 primarily concerns the relationship between the judge and the relevant party, as "[m]otions for recusal based on 28 U.S.C. § 455 require recusal only for personal, extrajudicial bias." *Stringer v. Alben*, 89 F. App'x 449, 451 (5th Cir. 2004). Gann cannot point to a single shred of evidence beyond his own erroneous self-perception to indicate that the Court harbors any such bias against him.

"[E]ven the most superficial research would have put [Gann] on notice that the factual circumstances he alleged were not grounds for recusal." *Henderson*, 901 F.2d at 1296. Because the Court's impartiality could not be reasonably questioned by an impartial observer under the facts presented, and because "there is absolutely no case authority cited by [Gann] to the contrary," Gann's insufficient § 455 Motion must be denied. *Id*.

## II.  Recusal Under 28 U.S.C. § 144 is Not Warranted

Gann's § 144 Motion suffers from the same flawed factual basis as the § 455 Motion and should similarly be denied. In examining a motion to recuse under 28 U.S.C. § 144, the Court must

---

[3] Gann and Ciarochi recognize this lack of legal basis, admitting that "[t]he caselaw does not give great instances of prior confrontations that are likely to be perceived as creating resentments by third parties" (Dkt. #100 at p. 19).

7

first determine whether it is supported by a legally sufficient affidavit or sworn declaration. "Affidavits of disqualification must be construed strictly 'for form, timeliness, and sufficiency.'" *Telles v. City of El Paso*, 164 F. App'x 492, 497 (5th Cir. 2006) (quoting *United States v. Womack*, 454 F.2d 1337, 1341 (5th Cir. 1972)). Thus, the Court turns exclusively to Gann's sworn declaration to determine whether it has presented legally sufficient evidence to support recusal. *See, e.g.*, *Chitimacha*, 690 F.2d at 1166 ("The Chitimachas also allege that Judge Davis has an ongoing investment interest in his former law firm. This allegation was not included in their affidavit. Therefore, [§] 455 is the only applicable section."); s*ee Henderson*, 901 F.2d at 1296.

Here, to the extent that Gann's five-page declaration offers any material facts at all, none are stated with particularity (*See* Dkt. #100 at pp. 25–29). The total absence of material facts cannot be understated: of the few facts the document does introduce, none are free from vague construction and empty prose. The declaration introduces no new information about the event or its guests, fails to mention the Court's appearance at the gathering, and does not describe any interaction between Gann or the Court beyond indefinite, indirect allusion (Dkt. #100 at pp. 25–29).[4] At one point in the document, Gann argues against his own third-party perception theory and admits that "I just don't know how offensive my conduct was perceived to be" (Dkt. #100 at p. 28). Such unfounded accusations are simply not enough to warrant recusal.

### III.    Gann Cannot Raise a Valid Basis for Recusal Even Assuming Factual Validity

Even assuming *arguendo* that the facts raised in the Motions are true, the evidence does not support recusal or disqualification. In this scenario, the relevant event occurred at a university

---

[4] Gann's sworn declaration only goes so far as to vaguely reference what it describes as "differences with the Court from days past," and "prior disagreements," along with "prior exchanges and the impressions or opiniuons [sic] that the Court may have formed years ago" (Dkt. #100 at pp. 27–28).

gathering over 37 years ago, and neither the Court nor Gann have had any interaction whatsoever in almost four decades (Dkt. #100 at p. 10). The proposed lack of temporal proximity alone renders the personal relationship between the Court and Gann far too attenuated, tenuous, and speculative to support a motion to recuse.[5] Moreover, the facts presented fall far short of satisfying the statutory grounds for recusal under either 28 U.S.C. §§ 455 or 144 and seek to advance legal theories unsupported by law. Accordingly, both Motions must be denied.

## CONCLUSION

It is therefore **ORDERED** that Defendant Scott Gann's Motion Based on 28 USC [sic] § 455 and Motion for In Camera Inspection (Dkt. #97) is hereby **DENIED**.

It is further **ORDERED** that Defendant Scott Gann's Brief Supporting Bases for Motions Related to Conflict, Recusal, and Disqualification (Dkt. #100) is hereby **DENIED**.

**IT IS SO ORDERED.**
SIGNED this 2nd day of December, 2025.

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[5] *See, e.g.*, *Chitimacha*, 690 F.2d at 1166 ("The relationship between Judge Davis and Texaco, terminated at least six years ago, is too remote and too innocuous to warrant disqualification under [§] 455(a) or [§] 144."); *see also United States v. Foreman*, No. CR 17-119-SDD-EWD, 2022 WL 16739859, at *7 (M.D. La. Nov. 7, 2022) (citing *Chitimacha*, 690 F.2d at 1166) (noting that the passage of five years without communication and the absence of evidence of an ongoing relationship between a judge and a party had rendered the connection too remote to support recusal); *Rogers v. KBR Tech. Serv., Inc.*, No. CIV A. H-06-1389, 2006 WL 2161560, at *1 (S.D. Tex. July 28, 2006) ("The judge's husband left Vinson & Elkins 19 years ago . . . . [a] reasonable and objective person, knowing all the facts, would not harbor doubts concerning this judge's impartiality based on this judge's husband's long-past association with Vinson & Elkins.); *United States v. Saadvandi*, 10 F. App'x 104, 105 (4th Cir. 2001) ("Due to the passage of time, the court's lack of recollection of the attorney or the prior events, and the lack of personal bias evident in the court's initial ruling, we conclude the district court's impartiality could not reasonably be questioned."); *United States v. Lovaglia*, 954 F.2d 811, 816 (2d Cir. 1992) (citation modified) ("Whether we characterize the socializing described above as 'an intense relationship,' as does Pavlisak or as occasional socializing, as does the government, it is important that we view it in its temporal context. The judge has had no business or social relationship with anyone in the Cerretani family since seven or eight years ago when any relationship drifted away and ceased.").